UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA L. BENNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 C 2276 |
| ) | |
| JOHN E. POTTER, Postmaster General of the ) | Judge Rebecca R. Pallmeyer |
| United States Postal Service, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cynthia L. Bennett works for the United States Postal Service as a mail processing equipment manager. In this action, Bennett, a white female, alleges sex and race discrimination at her workplace during 2007 and 2008. Bennett claims that her manager, Surjit Grewal, an Indian male, made disparaging remarks towards her about women on several occasions between 2007 and 2009. Bennett alleges, further, that Grewal took adverse employment actions against her because she is a woman: specifically, he did not reimburse her for her travel pay; he did not enter her correct pay level into the payroll system, resulting in underpayment; he denied her four or five opportunities to work overtime; and he delayed her receipt of a promotion. Bennett argues that Grewal's actions violated Title VII, 42 U.S.C. § 2000e, *et seq*. Defendant argues that the alleged incidents do not constitute adverse employment actions and that to the extent there was any disparate treatment, it was justified by legitimate, nondiscriminatory reasons. For the reasons explained herein, Defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiff, Cynthia Bennett, is a white female employed by the United States Postal Service at the Chicago Metro Surface Hub. (Pl.'s Response to Def.'s 56.1(a) [35] [hereinafter "Pl.'s Resp."] ¶¶ 1-2.) Her manager until October 2009 was Surjit Grewal, an Indian male, and her supervisor was Russell Ricard, a black male. (Pl.'s 56.1(b) ¶ 1.) Plaintiff claims she was the only female mail

processing mechanic under the supervision of Grewal and Ricard. (*Id.* ¶ 2); Defendant denies this, noting that in a related case Judge Zagel found another female held that position as well. (Def.'s Resp. to Pl.'s 56.1(b) [hereinafter "Def.'s Resp."] ¶ 2 (citing *Bennett v. Porter*, No. 08 C 3587, 2009 WL 3837448 (N.D. Ill. Nov. 17, 2009).)

Plaintiff alleges four adverse employment actions that she alleges were motivated both by her sex and race: delay in receipt of a promotion, payment at an incorrect level, nonpayment of travel pay, and denial of overtime opportunities.

Plaintiff first alleges that, on a date not specified, she submitted a request to Grewal and another maintenance manager, Gil Nuccio, to sit for the maintenance mechanic processing test, which would make her eligible for promotion.[1] (Pl.s 56.1(b) ¶ 33.) Plaintiff alleges that scheduling errors delayed her ability to sit for the test, and that she repeatedly asked Nuccio and Grewal about these errors, to which they replied, "We're working on it"; Defendant denies this portion of Plaintiff's account in its entirety. (*Id.* at 34; Def.'s Resp. ¶¶ 34-35.) Plaintiff contends that she sat for the August 2007 exam, and received results in September or October 2007 that showed she had been incorrectly registered for the exam. (Pl.'s 56.1(b) ¶ 35.) Plaintiff testified in her deposition that she has not been able to determine who was responsible for the registration error, though she does not believe Grewal was at fault. (Bennett Dep., Ex. 2 to Def.'s 56.1(a) at 11-15.) In December 2007, Grewal notified Plaintiff that the issue had been corrected and that she had passed the exam. (Pl.'s 56.1(b) ¶ 36.) She received her results in January 2008, and was promoted in March 2008. (*Id.* ¶¶ 36-37.)

After her promotion from a Level 6 Maintenance Mechanic to a Level 9 Mail Processing Equipment Manager, (Pl.'s 56.1(b) ¶ 3), Plaintiff attended an out-of-state training course in

---

[1] This is Bennett's second employment discrimination action against USPS. *See Bennett v. Porter*, No. 08 C 3587, 2009 WL 3837448 (N.D. Ill. Nov. 17, 2009). Although Bennett's previous case before Judge Zagel stemmed from an EEO complaint made in August 2007, these allegations were not included, and were not addressed in that case. *Id.* at *2.

Oklahoma from May 5 to June 13, 2008.  (Pl.'s Resp. ¶¶ 4-5.)  Plaintiff has not received reimbursement for "travel pay" totaling $242.29, which she claims she is owed for the time she spent traveling home from Oklahoma and back during a break in her training program.  (*Id.*) Defendant contends that Plaintiff received "all travel expenses that are allowed," and points to Postal Service regulations explaining that employees are not paid for time spent traveling home from an out-of-state assignment if that travel time does not fall during their regular work schedule. (Def.'s Resp. ¶¶ 20-21.)

On June 14, 2008, and again on July 11, 2008, Plaintiff received paychecks that were in total approximately $200 less than she was entitled to.  (Pl.'s Resp. ¶¶ 6-7.)  She was paid at the PS-07 level when she should have been paid at the PS-09 level.  (*Id.*)  Plaintiff notified James Frazier, Maintenance Operations Supervisor, and Grewal.  (*Id.* ¶¶ 7-8.)  It is not clear from the record when Plaintiff contacted Frazier, or how, but it appears from her deposition testimony and Frazier's EEO affidavit that she contacted him in person.  (Bennett Deposition at 34-35; Frazier Affidavit, Ex. 4 to Def.'s 56.1(a) at 4.)  Frazier corrected the mistake going forward, and referred the back pay issue to what both parties refer to as "leave control."  (Pl.'s Resp. ¶ 8.)  (Neither party explains what "leave control" is.)  Defendant contends Plaintiff was eventually paid at the correct level for the entire time period in question, and has attached pay records that reflect payment during the period in question at the higher pay level (Def.'s 56.1(a) ¶ 9; Ex. 4 to Def.'s 56.1(a) at 8-23); Plaintiff denies this but does not offer anything in support of this denial.[2]  (Pl.'s Resp. ¶ 9.)

On July 24, 2008, Plaintiff asked Grewal if she could work overtime on her next day off, the

---

[2] Local Rule 56.1(b) provides that in responding to a statement of material facts, there must be "specific references to the affidavits, parts of the record, and other supporting materials relied upon."  LR 56.1(b).  Denial of a statement of material fact without any accompanying support serves as an admission.  *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("[W]here a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial.").

following weekend, to which Grewal responded that no one was supposed to work on their days off. (Pl.'s Resp. ¶ 10.) Grewal controls overtime assigned for the department, pursuant to a collective bargaining agreement that provides for assignment of overtime as needed, in order of seniority on a rotating basis. (Pl.'s 56.1(b) ¶ 8.) On August 4, 2008, Plaintiff asked Grewal why Al Pough, another employee, had been allowed to work overtime on his day off. (Pl.'s Resp. ¶ 10.) Defendant asserts that Pough's days off were Saturday and Sunday, while Plaintiff's were Thursday and Friday. (Def.'s 56.1(a) ¶ 12.) Plaintiff denies this, but offers no support for her denial. (Pl.'s Resp. ¶ 12.) Grewal explains in his EEO affidavit that, "Ms. Bennett is on a personal convenience schedule change to be off on Fri/Sat so she can go to church on Saturday, but her regular [requested days off] are Thursday/Friday." (Grewal Affidavit, Ex. 6 to Def.'s 56.1(a) at 9.) The EEO decision noted, "[d]uring the period [Pough] and [Plaintiff] occupied the same position, Mr. [Pough] worked overtime on his regular days off . . . all of which were Saturdays, a day the complainant was off for religious observance." (EEO Decision, Ex. 1 to Compl. at 13.) Plaintiff never confronts this fact in the record.

Plaintiff alleges that in denying her overtime, Grewal explained that "he wanted men there." (Pl.'s 56.1(b) ¶ 6.) Although the record lacks a direct response from Grewal as to whether he made this statement, he did state that sex played no role in his decision to award overtime, and that overtime is assigned on an as-needed basis in rotation by order of seniority. (Grewal Affidavit at 9-10.) Grewal asserted that if Pough worked overtime, it would have been because he had five years more seniority than Plaintiff and that he had different days off than Plaintiff. (*Id.*) As reflected in the "Maintenance Craft Seniority Listing," of the twelve maintenance craft employees at Plaintiff's work site, ten have more seniority than Plaintiff, and Pough is the sixth most senior. (Pl.'s Resp. ¶ 14.) Grewal was only asked about a single instance when Plaintiff was allegedly denied overtime, on Thursday, July 24, and he explained that "we did not need extra help that day." (Grewal Affidavit at 9.) (Plaintiff later clarified she had not actually requested to work overtime on that day. (Pl.'s

4

Resp. ¶ 10.).) The record thus contains no specific date on which Plaintiff claims she was denied overtime but on which Al Pough or any other employee worked overtime. Plaintiff also alleges that Grewal told her "numerous times" between 2007 and 2009 that women should not be mechanics, and in July 2008 told her, "The guys don't like it that you're a mechanic and that you're showing them up." (Pl.'s 56.1(b) ¶¶ 4-5.) When asked whether Grewal told Plaintiff that "people were complaining about [Plaintiff]" because she is a "White female Mechanic," he responded, "This is an untrue statement. The statement was Tour One Mechanics were complaining about Tour 3 Mechanics getting over-time." (Grewal Affidavit at 11.)

As noted, Plaintiff previously brought suit against the Postal Service alleging sexual harassment, hostile work environment, and sex and race discrimination. *Bennett v. Potter*, No. 08 C 3587, 2009 WL 3837448 (N.D. Ill. Nov. 17, 2009). Those allegations involved conduct between November 2006 and May 2007 by Grewal, Ricard, and a co-worker, Doug Rattin. *Id.* at *1. Judge Zagel concluded that the comments Bennett alleged, including Grewal's statement that "women shouldn't be working on machines," did support an inference they were based on Bennett's sex. *Id.* at *3. That conduct was not "particularly frequent," however, and did not support a hostile work environment claim when viewed in light of Bennett's receipt of two promotions during the same time period. Grewal's promotion of another female, Judith Rodgers. *Id.* at *4-5. "[T]here is no legal right to sue your employer because your supervisor is a jerk," the court concluded. *Id.* at *5. The court also found the *Faragher/Ellerth* defense applicable because Bennett suffered no "tangible employment action," Rattin ceased his offensive conduct immediately after receiving the EEO complaint, and Bennett did not argue that any of Defendant's policies were inadequate. *Id.*

The court next turned to her discrimination claims, which rested on her allegations that she (1) received a delayed promotion[3], (2) was initially denied a tool box, and (3) was denied a

---

<div style="padding-left: 4em;">

³       This claim differs from the current delayed promotion claim. The earlier claim
(continued...)

</div>

requested change in shift assignment. Those allegations could not support a discrimination claim, the court concluded, because being denied a tool box or a shift change did not constitute "adverse employment actions," and the delay in promoting her did not reflect sex discrimination because the promotion she did not receive was awarded to another woman. *Id.* at *7. Finally, the court concluded that Bennett's race discrimination claim failed because there was no evidence that she had requested the work assignment that she claims was denied her, nor any evidence of pretext in the decision to award that position to her black colleagues. *Id.*

Plaintiff filed an Equal Employment Opportunity complaint with the Postal Service regarding her current allegations on September 5, 2008. (Compl., Ex. A ("EEO Decision") at 1.) The EEO concluded Bennett's allegation that she was paid at a lower level from June 14 to 20 and her allegation related to travel pay should be dismissed for mootness because both issues had been corrected, and she had received all pay due. (*Id.* at 2.) The EEO dismissed Plaintiff's complaint alleging that she had been denied the opportunity to work overtime because she failed to show any injury based on these allegations–in other words, she did not demonstrate she was ever actually denied the opportunity to work overtime. (*Id.* at 3.) "As stated by . . . [Bennett] herself, the issue is not about Mr. Grewal denying her any overtime, but is about her discovery that things were not as Mr. Grewal said they were [, regarding employees working overtime on their days off.]" (*Id.*) The agency's decision to deny Plaintiff's claim gave her the right to file the instant lawsuit within 90 days of its February 10, 2009 decision. (*Id.* at 15-16.) Plaintiff timely filed her complaint in this case on April 14, 2009.

## **DISCUSSION**

Plaintiff brings two claims: disparate treatment based on race and sex. (Compl. ¶¶ 1, 15.)

---

[3](...continued)
stemmed from a promotion to maintenance mechanic she sought in December 2006, which she received in January 2007. *Bennett*, 2009 WL 3837448, at *1.

Summary judgment will be granted if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The court must "view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). The non-moving party must set forth specific facts demonstrating a genuine issue for trial, however, and must "produce more than a scintilla of evidence in support of [her] position." *Conley v. Village of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). "[B]are allegations not supported by specific facts are not sufficient in opposing a motion for summary judgment." *Smith v. Potter*, 445 F.3d 1000, 1006 (7th Cir. 2006) (citations and quotation omitted).

## I. Sex Discrimination

Plaintiff proceeds both under the direct and indirect methods on her Title VII sex discrimination claim.

### A. Direct Method

The direct method requires that Plaintiff be a member of a protected class, and have suffered an adverse employment action by virtue of her membership in that class. *Burks v. Wisconsin Dep't. of Trans.*, 464 F.3d 744, 750 n.3. (7th Cir. 2006). Plaintiff must present direct or circumstantial evidence that "points directly to a discriminatory reason for the employer's action." *Id.* (citation and quotation omitted). Circumstantial evidence might consist of "ambiguous statements, suspicious timing, [and] discrimination against other employees . . . [that] compos[es] a convincing mosaic of discrimination against the plaintiff." *Troupe v. May Dep't. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994). To survive summary judgment "[a]ll that is required is evidence from which a rational trier of fact could reasonably infer that the defendant had [taken an adverse employment action] . . . because the [plaintiff] was a member of a protected class." *Id.*

Plaintiff urges that her claim may be proven under the direct method based on Grewal's statements concerning women and the adverse employment actions she alleges, for which she

7

contends Grewal was responsible. (Response at 12-13.) Plaintiff claims that Grewal told her "numerous times" between 2007 and 2009 that women shouldn't be mechanics. (Pl.'s 56.1(b) ¶ 4.) In July 2008, he also told her, "[T]he guys don't like it that you're a mechanic and that you're showing them up." (*Id.* ¶ 5.) Plaintiff further alleges that Grewal told her he would prefer men to women when staffing overtime assignments. (*Id.* ¶ 6.) Plaintiff does not offer further specifics.

The court concludes that Grewal's comments, if a jury believes they were made, "would prove that [Defendant] acted with discriminatory intent" in not awarding Plaintiff overtime assignments, as they are "an admission or 'near admission' that the employer's decision was discriminatory." *Nelson v. United Parcel Service, Inc.*, 337 Fed. Appx. 561, 563 (7th Cir. 2009) (citations omitted). Whether Plaintiff has presented evidence that the other allegedly adverse decisions were also discriminatory is a closer question. "Isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006) (citation omitted). Such a remark supports an inference of discrimination when it is made by the decision maker, around the time of the decision, and in reference to the adverse action. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). Plaintiff does not offer evidence that any of Grewal's remarks were made in temporal proximity to any of the other allegedly adverse decisions. The court need not dwell on this, however, because Plaintiff's alleged adverse actions do not constitute adverse actions for purposes of Title VII.

To proceed on a claim of sex discrimination, an employee must demonstrate a materially adverse employment action related to the alleged discrimination. *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). To support a federal claim, the change in employment status or conditions must be a significant one because "not everything that makes an employee unhappy is an actionable adverse action." *Id.* (citations and quotations omitted.) The adverse action must be on the order of "hiring, firing, failing to promote, reassignment with significantly different

responsibility, or a decision causing a significant change in benefits." *Id.* (citations and quotations omitted.)

As explained below, the court concludes that the circumstances of which Plaintiff complains—not receiving the correct level of pay, nonreceipt of travel pay, denial of overtime, and delayed promotion—do not meet that test.

### i. Payment at the Incorrect Level

Plaintiff alleges that she received pay at the incorrect level during portions of June and July 2008, amounting to a shortfall of about $200. (Pl.'s Resp. ¶ 6.) Defendant offers payroll records that show Defendant has been paid at the PS-09 level for the entire June 21 to July 4, 2008 pay period. (Ex. 4 to Def.'s Mot. For Summ. J. at 8-12.) The court's examination of these records supports this assertion. Plaintiff offers nothing but a bare denial that she received proper payment for this time period. (Pl.'s Resp. ¶ 9.) Further, Plaintiff agrees that James Frazier and "leave control" were responsible for correcting any error, not Grewal. (*Id.* ¶ 8.) Plaintiff has not met her burden of establishing a genuine issue of material fact as to whether she received the correct pay during the time in question. To the extent Plaintiff alleges the delay in receiving her pay itself constitutes an adverse action, that argument has been rejected elsewhere. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301 (7th Cir. 2004) (concluding that "[a] short delay in overtime payment is an inconvenience" or "minor annoyance[], not [a] matter[] which typically involve[s] [an] adverse employment action); *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 532 (7th Cir. 2003) ("[M]ere unhappiness or inconvenience are not actionable under Title VII."). The court concludes Plaintiff has not sufficiently alleged an adverse employment action here.

### ii. Denial of Travel Pay

Plaintiff next claims that she did not receive $242 of travel-related pay for her attendance at a training program in Oklahoma, which took place from May 5 to June 13, 2008. (Pl.'s Resp. ¶¶ 4, 5; Response at 5.) The record rebuts Plaintiff's allegation. Plaintiff explains that

9

"[s]he was . . . not compensated with one day's 'travel pay' for going to, and coming back from, training in Oklahoma." (Pl.'s Resp. ¶ 4.) Plaintiff claims that because there was a break in training after three weeks, "she had to travel to and from training twice." (*Id.*) Defendant disputes that Plaintiff is entitled to pay under these circumstances. (Def.'s Resp. ¶¶ 20-21.) Defendant points to Postal Service regulations explaining that "[e]mployees who are on an extended assignment away from home may be given the opportunity during the assignment to return home for personal convenience," however, the travel time "is not compensable when it falls outside of the scheduled service week given to the employee during the temporary assignment." (EEO Investigative Summary, Ex. A to Def.'s Resp. at 22.)

Plaintiff does not make any attempt to rebut Defendant's citation to these regulations. The only evidence Plaintiff offers that she has not received travel pay that she is due is her bare assertion that "I was not paid for my day's travel pay to compensate me for the time traveling to and from the class in Oklahoma." (Bennett Decl., Ex. 1 to Pl.'s 56.1(b) ¶ 5; Pl.'s Resp. ¶¶ 4-5.) More is required of a Plaintiff seeking to survive summary judgment. If the moving party has demonstrated why it believes there is no dispute as to a material fact, then the "party opposing the motion must [ ] set forth *specific facts* showing that a genuine issue of material facts exists." *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989) (citations omitted). Plaintiff's failure to offer any response to Defendant's specific showing that Postal Service regulations do not entitle her to the pay about which she complains is not sufficient to create a genuine issue of material fact necessary to survive summary judgment.

### iii. Denial of Overtime Opportunities

Plaintiff contends that she did not receive opportunities to work overtime because of Grewal's animus towards women. The parties agree that, pursuant to the postal employee's Collective Bargaining Agreement, overtime assignments are made by seniority on a rotating basis. (Response at 2.) Plaintiff alleges, however, that Grewal does not actually use this system, and

instead "offers overtime to the same people repeatedly," (*id.* at 2-3), and she "believes that preferential treatment is given to males on a non-rotating basis." (Def.'s Resp. ¶ 11.)

Denial of overtime can constitute an adverse employment action. *See Kause v. Alberto-Culver Co.*, No. 97 C 3085, 2000 Wl 875742, at *6 (N.D. Ill. June 28, 2000) ("The denial of overtime had a tangible economic effect on [plaintiff], an hourly employee, because it reduced her pay."); *Coleman v. Pepsi-Cola General Bottlers, Inc.*, No. 97 C 4898, 1998 WL 901675, at *12 (N.D. Ill. Dec. 21, 1998) (concluding that a shift change that reduced plaintiff's access to overtime work constituted an adverse employment action).

Plaintiff, however, does not make a single specific allegation concerning the denial of overtime, such as a date on which she requested overtime and was denied. Plaintiff testified in her deposition that she had been denied overtime "four or five" times, but she was unable to say specifically when that occurred without her notes. (Bennett Deposition, Ex. 2 to Pl.'s 56.1(a) at 61.) Plaintiff promised in her deposition that she would produce those notes, but those notes, or the information she testified was contained in them, do not appear anywhere in the record.

The Seventh Circuit affirmed a grant of summary judgment in a similar case brought under the Americans with Disabilities Act, where an individual suffering from alcoholism alleged he had been denied overtime:

> [Plaintiff] fails to come forward with any evidence to substantiate his allegations. He does not set forth any specific times that the Village gave others overtime opportunities, but denied the same to him. As well, he does not proffer any evidence to show that, on par, he did not receive the same number of overtime opportunities as others. [Plaintiff] merely makes the unsupported allegation that he was denied overtime on the basis of his [disability]. Such a statement is wholly inadequate to make out a prima facie case of discrimination.

*Conley v. Village of Bedford Park*, 215 F.3d 703, 711-12 (7th Cir. 2000). The court notes that the EEO Investigative Summary did include a summary of "Day-Off Overtime Worked between April and October 2008." (EEO Investigative Summary at 19.) That summary reveals that Plaintiff did receive fewer overtime hours than Al Pough, a black male, about whom she complained. But it also

reveals that she received more overtime than Daniel Scala, a white male who she alleged also received more overtime. (*Id.*) Those records also demonstrate that information concerning overtime pay is available, and Plaintiff could have sought it out to rebut summary judgment–but she has not done so. Plaintiff's vague allegation that she was denied overtime "four or five" times does not create a genuine issue of material fact suitable to survive summary judgment.

        **iv.     Delayed Promotion**

Finally, Plaintiff alleges that a delay in receiving her promotion constitutes an adverse employment action. Plaintiff alleges that Grewal and another manager erred in scheduling her maintenance mechanic processing test, and that her promotion was delayed as a result. "Plaintiff believes that Grewal delayed her promotion by not working to fix the complications related to Plaintiff's test scheduling and test results issues." (Response at 6.) Plaintiff alleges that she sat for the exam in August 2007, received her final results in January 2008, and received her promotion in March 2008. (*Id.*)

Plaintiff elaborates on this allegation in her deposition. She testified that it took "over three months" to first arrange for the test, and, after sitting for the August 2007 test, the results she received in September or October 2007 were in error because she had been registered for the wrong type of test. (Bennett Dep., Ex. 2 to Def.'s 56.1(a) at 5.) According to Plaintiff, Karen Redmond was responsible for scheduling the test, not Grewal. (*Id.* at 6.) Plaintiff asserts that she asked Grewal and Gil Nuccio, neither of whom was her supervisor[4], to contact Redmond in order to schedule the test. (*Id.* at 12.) She claims that she spoke to Grewal and Nuccio each more than

---

        [4]     Nuccio and Grewal both worked as maintenance managers, and when asked during her deposition Bennett explained they were not her supervisors. (Bennett Dep. at 11.) Her supervisor at the time was Russell Ricard, who Bennett contends had nothing to do with scheduling the test. (*Id.*) It is not clear from the record how the responsibilities of a manager differ from those of a supervisor, or whether Grewal and Nuccio actually were the appropriate people to contact in order to schedule her test. The record does suggest Grewal acted in a supervisory capacity, whether or not he actually served as Plaintiff's supervisor. She also refers to him as her "supervisor" in her complaint. (Compl. ¶ 17.)

12

ten times about the test, and that they would always reply, "We're working on it." (*Id.*) Plaintiff does not offer a time frame for these events. Plaintiff alleges that her test was incorrectly marked as an "entrance exam" rather than as an "in-service craft test." (*Id.* at 13.) Again, Plaintiff does not believe Grewal or Nuccio entered her testing information incorrectly, but asserts that Redmond may have been responsible for doing so. (*Id.* at 16.) In fact, she testified, after receiving the incorrect results, she approached Grewal, who told her to e-mail several other people to ask for assistance, which she did; Grewal also sent follow up e-mails, and notified her of her results a month before she received them in the mail. (*Id.* at 18-20.)

Had testing errors not occurred, Plaintiff alleges, she would have been promoted in September or October 2007. (*Id.* at 16-17.) She contends that "bids" were available at that time for her promotion, but that after receiving her corrected test results in January 2008, no "bid" was posted until February, and she did not receive promotion until March. (*Id.* at 20.) Notably, Plaintiff testified that her sole source of information regarding the availability of "bids" in late 2007 was Nuccio, who told her in August 2007 there were openings; Plaintiff never personally saw any opening posted after that, nor did Nuccio tell her the positions remained open. (*Id.* at 24-26.) Finally, when asked whether she believed these events occurred because of her race or sex, Plaintiff responded that she assumed they did not, and that this was simply an error. (*Id.* at 26.)

A delayed promotion can constitute an adverse employment action. *Cullum v. Brown*, 209 F.3d 1035, 1040 (7th Cir. 2000). A short delay does not suffice, however. The Seventh Circuit recently affirmed a grant of summary judgment against a plaintiff who complained of a two-month delay in receiving a promotion. The two-month delay did not constitute an adverse action, the court reasoned: "Employees cannot expect to be promoted the instant they apply. Some lag time has to be allowed for the application to work its way through the administrative process. . . ." *Bannon v. Univ. of Chicago*, 503 F.3d 623, 628 (7th Cir. 2007). Another court in this district distinguished *Cullum*, explaining that "the plaintiff [there] alleged that he was denied a promotion for *over three*

*years*, unlike in the instant case where [plaintiff] was approved–not denied–the promotion, and was delayed only *two to three months* in receiving the actual promotion." *Marshall v. Illinois Dep't. of Human Services*, No. 00 C 4680, 2004 WL 432461, at *6 n.1 (N.D. Ill. Feb. 18, 2004).

Plaintiff does not offer a date on which she first requested to take the test. She does not offer evidence as to when she would have been able to sit for the test, had her request been immediately honored. She disclaims entirely Grewal's responsibility for the errors in her test registration and delays in getting those errors corrected. Therefore, the only adverse action alleged here is the initial delay in processing her request to sit for the test. Had Plaintiff offered any evidence that the processing of this request took an abnormally long time, or that it took more than several months, that might suffice to create a genuine dispute as to an issue of material fact. Plaintiff, however, offers no time frame whatsoever as to the length of this delay—not even a bare assertion that she would have been able to sit for the test a month or two earlier. The Seventh Circuit's *Bannon* decision found summary judgment appropriate because a two-month delay in receiving a promotion did not constitute an adverse employment action. Plaintiff sets forth nothing to suggest her delay extended longer than two months, or that anything was involved in the delay other the time incident to the normal administrative process. Plaintiff has not set forth a genuine issue of material fact sufficient to defeat summary judgment.

Plaintiff has not established a genuine dispute of material fact as to whether these actions constitute adverse employment decisions, and the court concludes that her claim for direct discrimination does not survive summary judgment.

### B.    Indirect Method

Plaintiff may also proceed by the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case, Plaintiffs must present evidence of (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that similarly situated employees outside of the protected

class were treated more favorably. *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009). Having concluded that Plaintiff has not established that she was subject to an adverse employment action, the court concludes she can not establish a *prima facie* case of sex discrimination under this method. Defendant's motion for summary judgment on this claim is granted.

## II. Race Discrimination

Plaintiff offers no response to Defendant's motion for summary judgment on her race discrimination claim. "A party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Robyns v. Reliance Std. Life Ins. Co.*, 130 F.3d 1231, 1237 (7th Cir. 1997) (citations and quotations omitted). *See also Andree v. Siemens Energy and Automation, Inc.*, 90 Fed. Appx. 145, 152 (7th Cir. 2003) (affirming trial court's finding that plaintiff abandoned cause of action for unjust enrichment in failing to respond to motion for summary judgment on that issue).

Whether or not Plaintiff has forfeited this argument by not responding to Defendant's motion, the claim fails for the same reason as Plaintiff's sex discrimination claim: Plaintiff asserts the same adverse actions, and for the same reasons they did not support a sex discrimination claim, they do not support a race discrimination claim. Summary judgment is therefore granted.

## CONCLUSION

Defendant's motion for summary judgment [22] is granted.

ENTER:

Dated: March 30, 2011

_____
REBECCA R. PALLMEYER
United States District Judge

15